UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 23-2092 JGB (DTBx)** | Date | June 4, 2025 |
| Title | *B.K. et al. v. Eisenhower Medical Center* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) GRANTING Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 53); and (2) VACATING the June 9, 2025 Hearing (IN CHAMBERS)

Before the Court is Plaintiffs' unopposed motion for preliminary approval of class action settlement. ("Motion," Dkt. No. 53.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the Motion, the Court **GRANTS** the Motion and **VACATES** the June 9, 2025 hearing.

### I.   BACKGROUND

On October 12, 2023, plaintiffs B.K. and N.Z., (collectively, "Plaintiffs") individually, and on behalf of all others similarly situated, filed a complaint against defendant Eisenhower Medical Center ("Defendant" or "EMC"). ("Complaint," Dkt. No. 1.) The Complaint alleged fourteen causes of action: (1) violation of California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, et seq. ("CMIA"); (2) violation of Electronic Communications Privacy Act, 18 U.S.C. § 2511(1), et seq. ("ECPA"); (3) violation of ECPA, 18 U.S.C. § 2511(3)(a), et seq.; (4) violation of California Invasion of Privacy Act, Cal. Penal Code § 630, et seq. ("CIPA"); (5) violation of California Unfair Competition law, Cal. Bus. & Prof. Code, § 17200, et seq. ("UCL"); (6) invasion of privacy under California constitution; (7) invasion of privacy – intrusion upon seclusion; (8) breach of implied contract; (9) violation of California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA"); (10) violation of California Penal Code § 496(a) and (c); (11) negligence; (12) breach of confidence; (13) breach of fiduciary duty; and (14) unjust enrichment. (Id.)

On February 29, 2024, the Court granted Defendant's motion to dismiss with leave to amend eleven claims and without leave to amend three claims (claims two, three, and four). ("MTD Order," Dkt. No. 28).  On March 14, 2024, Plaintiffs filed a motion for reconsideration of the MTD Order as to their second (ECPA) and fourth (CIPA) claims.  (Dkt. No. 30.)  On April 11, 2024, the Court granted in part Plaintiffs' motion for reconsideration, allowing Plaintiffs to re-plead claims two and four. (Dkt. 36).

Plaintiffs filed their First Amended Complaint on April 22, 2024.  ("FAC," Dkt. No. 37.) The FAC alleges the following eleven causes of action: (1) violation of CMIA; (2) violation of ECPA; (3) violation of CIPA; (4) violation of California's UCL; (5) invasion of privacy under California constitution; (6) invasion of privacy – intrusion upon seclusion; (7) violation of CLRA; (8) violation of California Penal Code § 496(a) and (c); (9) breach of confidence; (10) breach of fiduciary duty; and (11) unjust enrichment.  (Id.)

On November 1, 2024, the parties filed a joint notice of settlement.  ("Notice," Dkt. No. 45.)  On February 18, 2025, Plaintiffs filed this unopposed Motion for preliminary approval of class settlement.  (See Motion.)  In support of the Motion, Plaintiffs filed the following documents:

- Joint declaration of Yana Hart and Bryan P. Thompson ("Hart & Thompson Decl.," Dkt. No. 53-2);
- Proposed class action settlement agreement (the "Agreement," Dkt. No. 53-3);
- Declaration of Matthew J. Langley ("Langley Decl.," Dkt. No. 53-5);
- Declaration of Ryan Aldridge regarding the proposed notice plan ("Class Notice Plan," Dkt. No. 53-7);
- Declaration of Plaintiff B.K. ("B.K. Decl.," Dkt. No. 53-8); and
- Declaration of Plaintiff N.Z. ("N.Z. Decl.," Dkt. No. 53-9).

## II.   FACTUAL ALLEGATIONS

Defendant is a health care organization offering a wide range of clinical services to patients in Southern California.  (Motion at 2.)  Defendant operates a website, https://www.eisenhowerhealth.org (the "Website"), and a patient portal, https://mychart.eisenhowerhealth.org/mychart (the "Portal" or "MyChart") (collectively, the "Web Properties").  (FAC ¶ 5.)  Plaintiffs allege that Defendant disregarded Plaintiffs' and the putative class members' privacy rights by intentionally, willfully, recklessly and/or negligently failing to implement adequate and reasonable measures to ensure that their personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") was safeguarded.  (Motion at 3.)  Plaintiffs allege Defendant installed Meta Platform Inc.'s ("Meta" or "Facebook") Meta Pixel ("Meta Pixel" or "Pixel") and other invisible third-party tracking technology on its Web Properties in order to intercept Plaintiffs' and putative class members' PII and PHI with the express purpose of disclosing that Private Information to third parties such as Meta and/or Google.  (FAC ¶ 7.)

### III.     LEGAL STANDARD

Approval of a class action settlement requires certification of a settlement class. La Fleur v. Med. Mgmt. Int'l, Inc., 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014) (internal quotation marks omitted). A court may certify a class if the plaintiff demonstrates the class meets the requirements of Federal Rules of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).[1] See Fed. R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a). Rule 23(b) requires one of the following: (1) prosecuting the claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication. Fed. R. Civ. P. 23(b).

Class action settlements must be approved by the court. See Fed. R. Civ. P. 23(e). At the preliminary approval stage, the court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Id. "The settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original). To determine whether a settlement agreement is potentially fair, a court considers the following factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

### IV.     CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS

The parties seek certification of the proposed settlement class for purposes of the Agreement. (Motion at 19-24.) The Agreement defines the proposed settlement class as follows: "[a]ll identifiable individuals who logged into the [Eisenhower Medical Center ("EMC")] MyChart patient portal, and/or submitted an online form and/or scheduled a laboratory appointment on EMC's public website www.eisenhowerhealth.org, in the time frame of January 1, 2019, to May 3, 2023" (the "Class Period"). (Agreement ¶ 10(mm).) The Court first addresses the Rule 23(a) requirements, then turns to the Rule 23(b) requirements.

---

[1] All references to "Rule" in this Order refer to the Federal Rules of Civil Procedure unless otherwise noted.

### A. Requirements of Rule 23(a)

#### 1. Numerosity

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). To be impracticable, joinder must be difficult or inconvenient, but need not be impossible. Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012). There is no numerical cutoff for sufficient numerosity, but 40 or more members will generally satisfy the numerosity requirement. Id. A plaintiff has the burden to establish that this requirement is satisfied. United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co., 593 F.3d 802, 806 (9th Cir. 2010). Here, the proposed settlement class includes approximately 190,392 individuals ("Class Members"). (Motion at 4, 19.) Accordingly, the Court concludes that the numerosity requirement is satisfied.

#### 2. Commonality

The commonality requirement is satisfied when plaintiffs assert claims that "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

Here, Plaintiffs and Class Members logged onto EMC's Web Properties during the Class Period. (Motion at 4.) The common question resolving the dispute is whether Defendant disclosed to third parties Plaintiffs' and Class Members' Private Information without authorization or lawful authority. (Id. at 20.) Class members' claims therefore turn on the same factual and legal questions. Accordingly, Plaintiffs have established commonality.

#### 3. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover No. Am., 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Hanon, 976 F.2d at 508). Because typicality is a permissive standard, the claims of the named plaintiffs need not be identical to those of the other class members. Hanlon, 150 F.3d at 1020.

Here, Plaintiffs' and Class Members' claims arise from the same nucleus of facts—EMC's disclosure of Private Information to third parties like Facebook and Google—and are based on EMC's same allegedly unlawful Meta Pixel usage practices. (Motion at 20.) Accordingly, the Court is satisfied that Plaintiff has met the typicality requirement.

**4. Adequacy**

In determining whether a proposed class representative will adequately protect the interests of the class, the court should ask whether the proposed class representative and her counsel have any conflicts of interest with any class member and whether the proposed class representative and her counsel will prosecute the action vigorously on behalf of the class. Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011).

Plaintiffs do not have interests antagonistic to those of the settlement class. (Motion at 21.) Plaintiffs contend that they understand their responsibilities in serving as class representatives and maintain that they are committed to representing the class in an appropriate and fair manner. (B.K. Decl. ¶ 5; N.Z. Decl. ¶ 5.)

Furthermore, Plaintiffs are represented by competent counsel with experience in class actions and privacy violation matters ("Class Counsel"). (Motion at 21.) Class Counsel's firm has been lead counsel in numerous ongoing as well as settled data privacy class actions. (Id.) Accordingly, the Court concludes that Plaintiffs and Class Counsel will adequality represent the interests of the proposed class.

**B. Requirements of Rule 23(b)**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Here, Plaintiff asserts the Agreement satisfies the requirements of Rule 23(b)(3). (Motion at 22-24.)

Rule 23(b)(3) requires (1) issues common to the whole class to predominate over individual issues and (2) that a class action be a superior method of adjudication for the controversy. See Fed. R. Civ. P. 23(b)(3). As to predominance, the "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (quoting Amchem, 521 U.S. at 623). "[T]he examination must rest on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" Id. (same). A class should not be certified if the issues of the case require separate adjudication of each individual class member's claims. Id.

Here, adjudication by representation is warranted because every Class Member was affected by the same allegedly unauthorized disclosure of Private Information caused by the same allegedly unlawful implementation and usage of the Meta Pixel by Defendant. (Motion at 22-23.) Plaintiff's claim is based on factual and legal questions about Defendant's practices that are not only common to the Class Members, but predominate under FRCP 23(e). (Id.) The Court is satisfied that the common questions predominate.

A class action must also be superior to other methods of adjudication for resolving the controversy. Fed. R. Civ. P. 23(b)(3). To determine superiority, a court's inquiry is guided by the following pertinent factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D). However, "[confronted] with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." Amchem, 521 U.S. at 620.

Here, Plaintiffs note that litigating each claim individually would not be economical for individual class members because the expense of litigation would surpass the potential recovery. (Motion at 23.) Accordingly, the Court concludes the superiority requirement is satisfied.

## V.     SETTLEMENT AGREEMENT

The Court incorporates by reference the definitions provided in the Agreement; all terms defined therein shall have the same meaning in this order.

### A. The Settlement Class

The Settlement Class is defined as "[a]ll identifiable individuals who logged into the EMC MyChart patient portal, and/or submitted an online form and/or scheduled a laboratory appointment on EMC's public website www.eisenhowerhealth.org, in the time frame of January 1, 2019, to May 3, 2023." (Agreement ¶ 10(mm).)

Excluded from the Class are EMC and its affiliates, parents, subsidiaries, officers, and directors, as well as the judge(s) presiding over this matter and their clerks. (Id.)

### B. Release

In exchange for the Settlement's benefits, all Settlement Class Members will release all Released Claims against Defendant as detailed in the Settlement Agreement. (Id. ¶ 9.)

The Plaintiffs' Release provision provides that: "[o]n the Effective Date and in consideration of the promises and covenants set forth in this Settlement Agreement, Plaintiffs will be deemed to have fully, finally, and forever completely released, relinquished, and

discharged the Released Persons from any and all past, present, and future claims, counterclaims, lawsuits, set-offs, costs, expenses, attorneys' fees and costs, losses, rights, demands, charges, complaints, actions, suits, causes of action, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, known, unknown, or capable of being known, in law or equity, fixed for contingent, accrued or unaccrued and matured or not matured that were or could have been asserted in the Litigation."  (Id. ¶ 78.)

The Settlement Class Release provision provides that: "[o]n the Effective Date and in consideration of the promises and covenants set forth in this Settlement Agreement, each Settlement Class Member will be deemed to have fully, finally, and forever completely released, relinquished, and discharged the Released Persons from any and all past, present, and future claims, counterclaims, lawsuits, set-offs, costs, expenses, attorneys' fees and costs, losses, rights, demands, charges, complaints, actions, suits, causes of action, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, in law or equity, fixed or contingent, accrued or unaccrued and matured or not matured that were or could have been asserted in the Litigation."  (Id. ¶ 79.)

Released Claims do not include any "medical malpractice, or other bodily injury claims, or claims relating to the enforcement of the settlement."  (Id. ¶ 77.)

### C. Monetary Terms

The Agreement provides for a non-reversionary cash Settlement Fund of $875,000 to pay (i) all Administrative Expenses; (ii) any Taxes; (iii) any Cash Compensation to Settlement Class Members, (iv) any court-approved Service Awards; and (v) any court-approved attorneys' fees and costs.  (Id. ¶ 13.)

#### 1. Cash Compensation to Settlement Class Members

All Settlement Class Members who submit a valid claim form will receive a pro rata share of the Net Settlement Fund ("Cash Compensation").  (Id. ¶ 25.)  Cash Compensation payments shall be issued on a pro rata basis, such that the aggregate value of the Cash Compensation payments does not exceed the Net Settlement Fund.  (Id. ¶ 90.)

Participating Settlement Class Members will receive Settlement Payments via electronic means made available by the Settlement Administrator or may elect payment by physical check.  (Id. ¶ 36.)  Any monies remaining in the Net Settlement Fund one hundred twenty (120) days after the issuance of Claim Payments shall be distributed to a cy pres recipient mutually agreed upon by the Parties and approved by the court.  (Id. ¶ 37.)

### D. Equitable Relief

Under the Agreement, Defendant agrees to create and maintain a Web Governance Committee to assess the implementation and use of analytics and advertising technologies on the

Website and patient portal to evaluate whether such use is consistent with Defendant's mission and all applicable law.  (Id. ¶ 23.)  Defendant also agrees that for two years following final approval of the Settlement, Defendant will not use the Meta Pixel or Google Analytics source code on its Website unless the Web Governance Committee makes the requisite legal determination under 45 CFR § 164.514(b)(1) and an affirmative disclosure posted on the webpage(s) on its Website that the tool(s) is/are being used on the Website as well as providing proper identification for the tool(s) being used.  (Id.)

### E.  Attorneys' Fees, Costs, Expenses, and Service Awards

Proposed Class Counsel anticipate seeking an award of attorneys' fees not to exceed $288,750 in fees, which is approximately 33% of the total value of the settlement fund, up to $20,000 in costs, and Service Awards for Class Representatives not to exceed $2,500 each.  (Id. ¶ 58.)  The motion for attorneys' fees and costs (and Class Representative Service Awards) will be filed no later than 14 Court days before the Objection Deadline so Class Members will have the opportunity to review and object if they choose to do so. (Id. ¶ 59.)  After reimbursement of costs and payment of attorneys' fees, Proposed Class Counsel have agreed to divide any attorney fee award evenly amongst themselves.  (Hart & Thompson Decl. ¶ 26; Langley Decl. ¶ 21.)  The Parties have no agreement as to the attorneys' fees or litigation costs to be paid to Proposed Class Counsel, and the Settlement is not contingent upon the Court awarding attorneys' fees, costs, and expenses, or Class Representative Service Awards.  (Agreement ¶ 61.)

### F.  Notice

Within 15 calendar days following the Court's entry of the Preliminary Approval Order, EMC will provide the Settlement Class List to the Settlement Administrator.  (Id. ¶ 42.)  Within 30 days of the Court's entry of the Preliminary Approval Order, the Settlement Administrator will disseminate the E-Mail Notice to the Settlement Class. (Id. ¶ 43.)  For Settlement Class Members with known emails addresses, notice will be provided via email given the efficiency of electronic delivery.  (Id.)  If there is no e-mail address on record for a Settlement Class Member, the Settlement Administrator shall mail the Postcard Notice to the Settlement Class Member's most recent mailing address in EMC's records.  (Id.)

No later than thirty (30) Days following entry of the Preliminary Approval Order, and prior to sending the E-Mail Notice or postcard notice to all Settlement Class Members, the Settlement Administrator will create a dedicated Settlement Website.  (Id. ¶ 44.)  The Settlement Administrator shall cause the Complaint, Long-Form Notice, E-mail Notice, Postcard Notice, Claim Form, the Settlement Agreement, and other relevant settlement and court documents to be available on the Settlement Website.  (Id.)  The Settlement Website will include a toll-free telephone number and mailing address through which the Settlement Administrator can be contacted and will allow for the electronic submission of Requests for Exclusion.  (Id. ¶¶ 44-45.)

//

### G. The Proposed Settlement Administrator

Plaintiffs' Counsel solicited competing bids from several qualified settlement administrators. (Hart & Thompson Decl. ¶ 12.) Through this competitive bidding process and following an in-depth evaluation of all the available final bids, Plaintiffs' Counsel selected and proposes that the Court appoint EAG Gulf Coast LLC ("EAG") as the Settlement Administrator. (Id.) EAG will be paid from the Settlement Fund and has estimated that the class settlement administration costs will be $74,972, including postage, based on a 10% claims rate. (Id. ¶ 13.) In addition to managing the notice program and receiving and processing claims and opt-outs, EAG will maintain the Settlement Website containing links to the Notice, Claim Form, and all other relevant Settlement documents. (Id.)

### H. Opt-Out and Objection Procedures

Any Settlement Class Member may submit a Request for Exclusion from the Settlement by or before the Opt-Out Date. (Agreement ¶ 55.) To be valid, the Request for Exclusion must be (i) submitted electronically on the Settlement Website, or (ii) postmarked or received by the Settlement Administrator on or before the Opt-Out Date at the address set forth in the Long-Form Notice. (Id.)

Any Settlement Class Member who wishes to object to the proposed Settlement Agreement must file with the Court and serve a written objection(s) to the Settlement on the Settlement Administrator, at the address set forth in the Long-Form Notice. (Id. ¶ 49.) Each Objection must be filed with the Court and served on the Settlement Administrator not later than the Objection Deadline, and must include the following: (i) set forth the Settlement Class Member's full name, current address, telephone number, and email address; (ii) contain the Settlement Class Member's original signature; (iii) contain proof that the Settlement Class Member is a member of the Settlement Class (e.g., copy of settlement notice or confirmation of online form submission or laboratory appointment scheduling); (iv) state that the Settlement Class Member objects to the Settlement, in whole or in part; (v) set forth a statement of the legal and factual basis for the Objection; (vi) provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her position; (vii) identify all counsel representing the Settlement Class Member, if any; (viii) contain the signature of the Settlement Class Member's duly authorized attorney or other duly authorized representative, along with documentation setting forth such representation; and (ix) contain a list, including case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement. (Id. ¶¶ 50-51.)

The Requests for Exclusion and Objection procedures are detailed in plain language in the Long Form Notice, the Settlement Agreement, and on the Settlement Website. (Id. ¶ 57.)

//
//
//

## VI. PRELIMINARY APPROVAL OF THE SETTLEMENT

"[Rule 23] requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon, 150 F.3d at 1026.  To determine whether a settlement agreement meets these standards, the court considers a number of factors, including "the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout trial, the amount offered in settlement, the extent of discovery completed, and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." Stanton, 327 F.3d at 959 (internal citations omitted).  The settlement may not be a product of collusion among the negotiating parties.  In re Mego Fin, Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

"At the preliminary approval stage, some of the factors cannot be fully assessed.  Accordingly, a full fairness analysis is unnecessary." Litty v. Merrill Lynch & Co., 2015 WL 4698475, *8 (C.D. Cal. Apr. 27, 2015).  Rather, the court need only decide whether the settlement is potentially fair, Acosta, 243 F.R.D. at 386, in light of the strong judicial policy in favor of settlement of class actions.  Class Plaintiffs, 955 F.2d 1276.  "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 15 F.3d at 1027.

**A. Extent of Discovery and Stage of the Proceedings**

For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta, 243 F.R.D. at 396 (internal quotation marks omitted).  Here the parties engaged in fact-investigation "through settlement negotiations and informal discovery." (Motion at 15.)  Defendant provided Plaintiffs' counsel with "data regarding the use and implementation of the Meta Pixel, the potential class size, and other details sufficient to provide all parties and the mediator with the ability to thoroughly evaluate the case, including issues of liability and damages." (Id.)  These documents and data "enabled counsel here to make an informed decision regarding the strengths and weaknesses of Plaintiffs' claims and assess the fairness and reasonableness of the Settlement." (Hart & Thompson Decl. ¶¶ 6-8.)  "The Settlement is the product of informed, arm's-length settlement negotiations, including a full-day mediation on October 11, 2024, with Martin F. Scheinman, Esq. of Scheinman Arbitration and Mediation Services and nearly six months of negotiations between the Parties." (Motion at 1.)

Because Plaintiff participated in investigation and mediation, the Court finds each side has a clear idea of the strengths and weaknesses of its respective cases and concludes that the extent of discovery and the stage of proceedings weigh in favor of preliminary approval. See

Lewis v. Starbucks Corp., 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases."); In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."); Manual for Complex Litigation (Fourth) § 13.12 (recognizing benefits of settlement are diminished if postponed until discovery is completed and approving of targeting early discovery at information needed for settlement negotiations).

**B.  Amount Offered in Settlement**

In determining whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego, 213 F.3d at 459.

The Agreement provides for a non-reversionary cash Settlement Fund of $875,000. (Motion at 5.)  The parties estimate that the monetary relief for the Settlement Class will be a pro rate share per class member of $4.59 each.  (Id. at 14.)  Plaintiffs contend this relief is within the range that has been approved in similar privacy cases involving tracking pixels.  See In re Advocate Aurora Health Pixel Litig., 740 F. Supp. 3d 736, 753 (E.D. Wis. 2024) (approving settlement with pro rata payment of $4.89).  Plaintiffs further contend that even if they "were able to show liability, there would be extensive litigation regarding what damages could be proven and how those would be calculated" and that "putting that question to the jury through dueling experts raises a real risk of zero recovery."  (Motion at 14-15.)

Although the settlement amount may represent a small fraction of the maximum value of this litigation, "'[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'"  In re Mego, 213 F.3d at 459 (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)).  In In re Mego, the Ninth Circuit considered the difficulties in proving the case and determined the settlement amount, which was one-sixth of the potential recovery, was fair and adequate.  Id.  Given the difficulties posed to each individual of pursuing his or her claim, the Court finds the settlement amount is potentially fair.

**C.  Strength of Case and Risk, Expense, Complexity, and Likely Duration of Litigation**

The risk, expense, and complexity of further litigation is significant, and "[e]stimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)."  Schaffer v. Litton Loan Servicing, LP, 2012 WL 10274679, at *11 (C.D. Cal. 2012).

Plaintiffs argue that "[p]rosecuting this litigation further would be lengthy, complex, and impose significant costs on all parties, as continued proceedings would likely include substantial motion practice, extensive fact discovery, class certification proceedings, considerable expert

discovery . . . trial and a likely appeal." (Motion at 12.) Plaintiffs argue that Defendant's likely arguments pose significant risks in continued litigation, including the prospect that a class might not be certified. (Id.) Plaintiffs contend that "the emerging and evolving area of data privacy and meta pixel tracking litigation is especially risky and complex." (Id. at 11.)

The Court believes the risk, expense, and likely duration of further litigation weigh in favor of preliminary approval. Without the Agreement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which the Court acknowledges is long and expensive. Overall, these factors weigh in favor of preliminary approval.

**D. Experience and Views of Counsel**

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted). Here, the parties reached settlement after review of their claims and defenses, with the assistance of a mediator, and Plaintiffs' counsel recommends approval of the Agreement. (Hart & Thompson Decl. ¶¶ 8-9, Langley Decl., ¶¶ 16-17.) The Court finds this factor weighs in favor of preliminary approval.

**E. Collusion Between the Parties**

"To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others." Litty, 2015 WL 4698475, at *10 (quoting Staton, 327 F.3d at 961).

As an initial matter, the Court notes that settlement negotiations were conducted at arms-length. (Motion at 17.) The parties engaged in mediation with an experienced and well-regarded mediator. (Hart & Thompson Decl. ¶ 6.) The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive. See, e.g., Satchell v. Fed Ex. Corp., 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

The Court next evaluates the settlement's financial terms. The Agreement is not contingent upon the Court awarding Class Representative Service Awards or attorneys' fees, costs, and expenses. (Agreement ¶ 61.) Instead, Plaintiffs will file a motion for attorneys' fees, costs, and Class Representative Service Awards no later than 14 Court days before the Objection Deadline. (Id. 59.)

Plaintiffs anticipate seeking Service Awards for Class Representatives not to exceed $2,500 each. (Id. ¶ 58-59.) A court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for the time spent in

litigation activities. See In re Mego, 213 F.3d at 463 (finding the district court did not abuse its discretion in awarding an incentive award to the class representatives). Plaintiffs contend that the "proposed Service Awards are comparable to those awarded in recent data privacy settlements." (Motion at 6 (citing In re Yahoo! Inc. Customer Data Sec. Breach Litig., 2020 WL 4212811, at *1 (N.D. Cal. July 22, 2020), aff'd, 2022 WL 2304236 (9th Cir. June 27, 2022) (approving $2,500 to $7,500 awards in data breach case).) Plaintiffs argue that they "have participated in this litigation from its inception, spent time providing valuable information to Plaintiffs' Counsel in connection with investigating and developing their claims in this action, reviewed and approved documents including the Complaint and the Settlement Agreement, and dedicated themselves to vigorously pursuing litigation on behalf of the putative class." (Motion at 7; B.K. Decl. ¶ 5; N.Z. Decl. ¶ 5.) The Court advises Plaintiffs to provide greater detail about their time spent participating in the litigation in their future motion. See Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1165 (9th Cir. 2013) (stating that there is a "serious question whether [a] class representative[] could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement when [the class representative] would receive $5,000" in an incentive award).

As for attorneys' fees, Plaintiffs' Counsel anticipates requesting an award of up to $288,750, or 33% of the total value of the settlement fund. (Motion at 6.) The Ninth Circuit has found that a benchmark of 25% of the common fund is a reasonable attorneys' fee award. Hanlon, 150 F.3d at 1029. The Court, in its discretion, may award attorneys' fees in a class action by applying either the percentage-of-the-fund method or the lodestar method. Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Next, the Court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992), that have not been subsumed in the lodestar calculation. See Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028–29 (9th Cir. 2000). Here, Plaintiffs' counsel's anticipated fee award request is high. Assuming Plaintiffs' counsel will provide support for their anticipated fee award request in their future motion, the Court finds that the anticipated fee award request is *potentially* reasonable.

Because the Agreement is not contingent upon the Court awarding attorneys' fees, costs, and expenses, or Class Representative Service Awards, the Court finds no evidence of collusion. This factor weighs in favor of preliminary approval.

### F. Remaining Factors

In addition to the factors discussed above, the Court may consider the risk of maintaining class action status throughout the trial, the presence of a governmental participant, and the

reaction of the class members to the proposed settlement. <u>Staton</u>, 327 F.3d at 959 (internal citations omitted). At this stage, the Court cannot fully analyze the remaining factors. For example, there is no governmental participant in this action. Additionally, the settlement class members have yet to receive notice of the settlement Agreement and have not had an opportunity to comment or object to its terms. The Court directs Plaintiffs, in their motion for final approval, to provide briefing on these issues.

On balance the factors support preliminary approval of the Agreement. The Agreement is potentially fair, adequate, and reasonable.

### VII.   CLASS NOTICE

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the form and content of the proposed Notice is reasonable and fair and adequately advises Class Members of the terms of the proposed settlement; of their right to payment under the settlement; of their right to file a Request for Exclusion; of the preliminary court approval; of the timing and procedural requirements for excluding oneself from the Class and/or objecting to the settlement; and of the date of the final approval hearing. Thus, the Court finds that the E-Mail Notice, Postcard Notice, and Claim Form clearly comport with all constitutional requirements, including those of due process.

The Agreement provides that within 15 days of the Court's Preliminary Approval Order, Defendant will provide the Settlement Administrator with the Class Settlement List. (Agreement ¶ 42.) Within 30 days the Court's Preliminary Approval Order, the Settlement Administrator will create a dedicated Settlement Website and either (1) disseminate the E-Mail Notice to Settlement Class Members with known emails addresses or, alternatively, (2) mail the Postcard Notice to the Settlement Class Member's most recent mailing address in EMC's records. (<u>Id.</u>) The Court finds that the notice plan constitutes an effective method of notifying Settlement Class Members of their rights with respect to this action and settlement. (Motion at 7-8.)

### VIII.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for preliminary approval. The Court **ORDERS** as follows:

1. The Agreement is preliminarily approved as potentially fair, reasonable, and adequate for members of the settlement class. However, in their motion for final approval, Plaintiffs shall address the concerns raised above.

2. The following Settlement Class is certified for settlement purposes only:

    All identifiable individuals who logged into the EMC MyChart patient portal, and/or submitted an online form and/or scheduled a laboratory appointment on EMC's public website www.eisenhowerhealth.org, in the time frame of January 1, 2019, to May 3, 2023.

3. The Court appoints Clarkson Law Firm, P.C. and Almeida Law Group, LLC, to serve as counsel on behalf of the Settlement Class for purposes of settlement only.

4. Plaintiffs B.K. and N.Z. are appointed as the representatives of the Settlement Class for purposes of settlement only.

5. The Court appoints EAG Gulf Coast, LLC as the settlement administrator.

6. The Court approves, as to form and content, the E-Mail Notice, Postcard Notice, and Claim Form.

7. The Court approves the methods for giving notice of the Agreement to the Settlement Class, as stated in the Agreement and the Motion.

8. No later than 15 days after the entry of this Order, Defendant shall provide the Settlement Class List to the Settlement Administrator.

9. No later than 30 days after the entry of this Order, the Settlement Administrator shall disseminate the E-Mail Notice or Postcard Notice to the Settlement Class.

10. The Objection Deadline shall be 60 calendar days after the Notice Date. The Exclusion Deadline shall be 60 calendar days after the Notice Date. The Claims Deadline shall be 90 calendar days after the Notice Date. Class Counsel's Motions for Attorneys' Fees, Costs, and Service Payments shall be filed 14 court days prior to the Objection / Exclusion Deadline.

11. The Final Approval Hearing shall be held on **Monday, October 20, 2025**, at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division, located at 3470 12th Street, Riverside, California 92501. The Final Approval Hearing may be postponed, adjourned, transferred, or continued by order of the Court without further notice to Class Members. After the Final Approval Hearing, the Court may enter a Final Approval Order in accordance with the Settlement Agreement that will adjudicate the rights of all Class Members.

12. The parties' briefs and other papers in support of final approval of the proposed settlement shall be filed with the Court no later than 28 days prior to the Final Approval Hearing.

13. As of the date this Order is signed, all dates and deadlines associated with the Action shall be stayed, other than those pertaining to the administration of the settlement.

14. If for any reason the Court does not execute and file an order granting Final Approval of the Settlement, or if the Effective Date, as defined in the Settlement Agreement, does not occur for any reason whatsoever, the Settlement Agreement and all evidence and proceedings had in connection therewith shall be dismissed without prejudice to the status quo ante rights of the parties in this action, as set forth in the Settlement Agreement, and this Order shall be rendered null and void and shall be vacated.

15. The June 9, 2025 hearing is **VACATED**.

**IT IS SO ORDERED.**